SHORES, Justice.
This is an appeal from an order of the trial court dated January 24, 1979, refusing to set aside a sale of certain properties theretofore ordered sold by the court. The appellants offered no testimony in support of their motion to set aside the sale.
From the record before us, the trial court could have found, and did find, based upon a stipulation entered into between the parties to this litigation, all of whom were represented by counsel, that Hales and Roper were partners in a strip mining venture under which they borrowed large sums of money to purchase land. Title to the land was taken in Hales’ name, but both Hales and Roper were signatories to notes securing loans for the purchase price. After a time, the parties entered into an agreement whereby Roper agreed to sell and Hales agreed to buy Roper’s interest in the properties. The agreement is as follows:
“STATE OF ALABAMA I
I AGREEMENT TO SELL
COUNTY OF DeKALB I MINERAL INTEREST
“THIS AGREEMENT, made and entered into on this the 24 day of January, 1976, by and be-between JOHN ROPER and wife, MADELINE ROPER, hereinafter called Sellers, and PHILIP HALES, hereinafter called Buyer.
“WITNESSETH:
“That for and in consideration of the sum of ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS, and the assumption of certain obligations, the Sellers herewith sell to PHILIP HALES the mineral interests and items appearing on Exhibit ‘A’, which is attached hereto and made a part hereof.
“It is herewith covenanted and agreed that as part of the consideration of this agreement, PHILIP HALES will indemnify and hold harmless JOHN ROPER and wife, MADELINE ROPER, from any and all liability which they may incur as the result of their execution of that certain mortgage and note to Central Bank, N. A., in the amount of FOUR HUNDRED TWENTY-FIVE THOUSAND DOLLARS, dated February 23, 1975, commonly referred to as the mortgage on the Austin property.
*226 “PHILIP HALES will indemnify and hold harmless JOHN ROPER and wife, MADELINE ROPER, from any and all liability as the result of their execution of Note No. 24300 to the Sand Mountain Bank, Boaz, Alabama, dated January 11, 1975, with an original indebtedness of ONE HUNDRED THIRTY-SIX THOUSAND DOLLARS.
“PHILIP HALES will indemnify and hold harmless JOHN ROPER and wife, MADELINE ROPER, from any and all liability as the result of that certain note executed by them to the Sand Mountain Bank, Boaz, Alabama, which said note being note no. 26266, dated June 20,1975, for an original amount of SEVENTY-EIGHT THOUSAND SEVEN HUNDRED FIFTY DOLLARS.
“It is understood and agreed between the buyer and sellers that PHILIP HALES will pay down, or has paid down, to the Sellers the sum of TWENTY-FIVE THOUSAND DOLLARS. The Balance of ONE HUNDRED THOUSAND DOLLARS shall be paid to the Sellers at the rate of THREE THOUSAND DOLLARS, per month, for twelve months, beginning January 1, 1976, with the balance being due and payable January 1, 1977. There •is no interest charged by the Sellers to the Buyer and the Buyer may prepay at any time, any amount of the indebtedness, without penalty or interest.
“In conjunction with this agreement, certain other instruments have been executed by the parties. These instruments have been attached hereto and made a part hereof by reference.
“EXECUTED at Fort Payne, Alabama on this the 24 day of Jan, 1976.
“Seller:
/s/ Madeline Roper Madeline Roper
/s/ John H. Roper John Roper
Buyer:
/s/ Philip Hales Philip Hales”
When Hales defaulted on the note, Roper brought this action on the note and alternatively asked for a sale for division of the various parcels of land. When the case was called for trial, the parties, through their attorneys, entered into the following stipulation:
“DECEMBER 12, 1977
STIPULATION

“MR. SCRUGGS:

“Show that the parties by their respective attorneys appeared in open court today and entered the following agreement of facts:
“(1) John Roper is the owner of an undivided one-half interest in and to the surface of the three tracts of land referred to in the deposition.
“(2) John Roper is the owner of an undivided 15% interest in the mineral rights of the ‘eleven forties.’
“(3) The parties make the following agreement in open court: Phillip Hales will give to John Roper a first purchase money mortgage on the surface interest of the three tracts of land referred to in number one.
“(4) The court impresses an equitable lien on the 15% mineral interest of the ‘eleven forties’; said equitable lien to inure to the benefit of the Plaintiff, and stand as additional security for the first purchase money mortgage above.
“(5) The Defendant will pay to the Plaintiff, this date, the sum of five thousand dollars ($5,000.00). The Defendant will pay to the Plaintiff an additional five thousand dollars ($5,000.00) on the 2nd day of January, 1978.
“(6) Within thirty days (30) of the date of this order, the attorney for the Plaintiff will prepare a deed of statutory warranty, deeding the surface interests and the mineral interests to the Defendant, and the Defendant will execute the note and first purchase money mortgage simultaneously.
“(7) The deed presently in possession of the Court will be held by the Court, pending the performance of the agreement herein made today.
*227 “(8) The Plaintiffs claim of a sale for division is held in abeyance, pending further orders of the Court, and with the Defendant being given the right to plead further as to the question of the sale for division, insofar as it relates to the 15% mineral interest.
“(9) The gross indebtedness of the Defendant to the Plaintiff will be the sum of eighty-seven thousand, five hundred dollars ($87,500.00), inclusive of attorneys’ fees, but bearing interest at the rate of 8% per an-num, and being payable in twelve (12) consecutive monthly installments, the first regular installment of which is due the 12th day of February, 1978.
“If this settlement order is entered by the Court, then the whole case is over except for one item, that is, that the Plaintiff, Roper, has not dismissed his bill to sell it for division. The reason he hasn’t is the following: Phillip is going to give John Roper a mortgage. If Mr. Phillip Hales doesn’t pay the mortgage, then, Mr. Roper can ask the Court to sell the property for division between the tenants in common, or foreclose his mortgage. That is, advertise it for sale at the courthouse. That is still left open, but it cannot be exercised, that is, Roper cannot sell for division unless Phillip fails to pay. If PhilHp pays the mortgage he owns everything that Roper had in the case. If he doesn’t, then the Court has to sell the property for sale for division, divide it between Roper and Hales, or there could be a foreclosure of the mortgage, which would be a sale of the property at the courthouse. However, insofar as anything in this case might affect Mr. Hales’ right to sue any other party, except Mr. Roper or his wife, that is preserved unto Mr. Hales. He cannot lose any rights. The equitable lien is merely a method as additional security for the mortgage, and is to be written by the Judge, at the time of the execution and recording of the deeds and the mortgage.

“MR. ROSENBLUM:

“All right, can I state our concerns as regards to this?

“MR. SCRUGGS:

“No, sir, either that is the way under Alabama law that it is, and unless it is that way, we are not going to do it.

“MR. ROSENBLUM:

“Do I understand, then, that what you are saying is, that it would not preclude our — the claim that I am concerned about losing, is claims relating to this escrow agreement that we contend that there never was one, or that we never heard of it to the degree that there would be an action in the future in the event that this agreement isn’t fully carried out, and that that action would involve division of the property. Would we be foreclosed from raising the issue that there was no escrow agreement here, that there was admitted no escrow agreement here on the record, so far as we are concerned?

“MR. SCRIGGS:

“You would be foreclosed in asserting that against Mr. Roper. You would be totally free to assert that against any other party existent in this world, but not Mr. Roper.

“MR. ROSENBLUM:

“So, in other words, then, on a sale, on an action for division, we wouldn’t be able to assert our basic defense?

“MR. SCRUGGS:

“Not against Mr. Roper, but you would have a third party claim against somebody else if you got one. This won’t stop you from suing anybody else.

“MR. ROSENBLUM:

“Well, Mr. Roper may be a necessary party in a suit like that.

“MR. SCRUGGS:

“He might be a witness, but as far as a party, he wouldn’t be.

“MR. BECK:

“But, we could use as a basis on this particular transaction here, there wouldn’t be any action against him, but it might be on some other reached agreement somewhere down the line on something else.

*228
“MR. SCRUGGS:

“Well, under the compulsory counterclaim.

“MR. BECK:

“Where he participated in any of the things that happened back yonder.

“MR. SCRUGGS:

“Yes, sir, but under the compulsory counter-claim it would have to arise after today, under the new rules. If it is a wholly unrelated transaction that occurred after today.

“MR. BECK:

“In other words, this settles the matter between him and Roper if we get that done right like we’re supposed to have it.

“MR. SCRUGGS:

“Right.

“MR. BECK:

“And, he wouldn’t have any claim on anything whatever, except what is demonstrated by that mortgage.

“MR. SCRUGGS:

“Yes, sir, that’s exactly right.

“MR. BECK:

“And, anything else is wiped out.

“MR. SCRUGGS:

“Both sides, but not to any third party. “MR. ROSENBLUM:
“Does Mr. Roper have any claims — Mr. Roper will also be foreclosed against bringing any claims against Mr. Hales on anything?

“MR. SCRUGGS:

“Yes, sir, except those rights granted by a mortgage in ordinary form, and by the sale for division, and by the equitable lien, that’s true.”
Thereafter, the trial court entered the following order:
“ORDER
“THIS CAUSE coming on for hearing on December 12,1977, and upon the depositions and exhibits thereto, and upon the oral stipulations of fact made before the Court and upon the agreement of the parties, it is hereby considered
“ORDERED, ADJUDGED AND DECREED by this Court as follows:
“1. The Court finds that JOHN ROPER AND MADELINE ROPER are the owners of an undivided one-half interest in and to the surface of real estate described by the Exhibit to this order as tracts I, II, and III, and that the other undivided one-half interest resides to the Defendants.
“2. The Court finds that JOHN ROPER and MADELINE ROPER are the owners of an undivided fifteen percent (15%) interest in and to the mineral rights of Tract IV.
“3. The Court finds that the Defendant, PHILIP HALES did sign a contract to purchase the interests of JOHN ROPER for the sum of ONE HUNDRED FIFTEEN THOUSAND DOLLARS ($115,-000.00) as per the terms and conditions of the contract in evidence in this cause. “4. The question of whether or not PHILIP HALES executed the promissory note sued upon is not necessary for the rendition of this decree and therefore is not decided herein.
“5. The Court finds that under the contract referred to above, there was not a delivery of the title to the Defendants by the Plaintiffs, and further that the Plaintiffs are entitled to maintain a bill for division of the premises by public sale. “6. Nevertheless, the parties, after extensive discussion, both in and out of the presence of the Court, made the following agreement which the Court now adopts as its decree in this case.
“a. The Plaintiffs will convey the premises described as Tracts I, II, III, and IV, to the Defendants for the total consideration of Eighty Seven Thousand Five Hundred Dollars ($87,500.00), Five Thousand Dollars ($5,000.00) paid on December 12, 1977, Five Thousand Dollars ($5,000.00) paid on January 2, 1978, and the balance of Seventy Seven Thousand Five Hundred Dollars ($77,500.00) to be paid in twelve equal consecutive monthly install *229 ments, the first installment of which is payable on the 12th day of February, 1978, and at the rate of Eight percent (8%) interest per annum.
“b. The conveyance from the Plaintiffs to the Defendants shall be by statutory deed, but with the understanding that the Defendants have already paid any and all mortgages, liens and encumbrances on the premises, which the Defendants represent that they have already done.
“7. The Court impresses upon the undivided fifteen percent (15%) mineral interest, an equitable lien as additional security to the mortgage to be executed by the Defendants.
“8. By agreement of the parties, the Plaintiffs shall have, upon a default by the Defendants, the option of having the sale nullified by the Court, and immediately proceeding to a sale for division at the instance of the Plaintiffs, or of proceeding to a foreclosure under the mortgage to be executed by the Defendants. If the Defendants shall fail or refuse to pay any sum due under the mortgage or under this decree for a period of five (5) business days, then and in that event, the Plaintiffs shall file in this cause, an election, therein setting out their election to either proceed with the sale for division, or to proceed under the terms of the mortgage. In the event that the Plaintiffs elect to proceed under the mortgage, the parties shall be governed by the terms thereof. But in the event, that the Plaintiffs elect to proceed under the sale for division, that sale shall be conducted as follows:
“a. The Register shall proceed to advertise the sale once a week for three consecutive weeks in a newspaper of general circulation in DeKalb and Jackson Counties.
“b. The property shall be sold to the highest and best bidder for cash, with a ten percent (10%) cash deposit being required pending the report of sale to the Court.
“c. The solicitors for the Plaintiffs shall be entitled to a reasonable attorney’s fee for their services in said sale, not to exceed the sum of Ten percent (10%).
“d. Any sums paid from the Defendants to the Plaintiffs under the mortgage shall be a lien upon the proceeds of the sale together with interest at the rate of eight percent (8%) thereon.
“9. All other claims, cross-claims and counter-claims arising out of these transactions, whether asserted or not, are hereby settled between the parties, save and except for such matters as were heretofore made the subject of this order.
/s/ W. G. Hawkins CIRCUIT JUDGE
“DATED: Jan 17. 1978
“FILED Oct 2, 1978
Gloria R. Fortson, Clerk”
When Hales did not perform pursuant to the stipulation and judgment entered thereon on Roper’s motion, the trial court ordered the lands sold for division. Thereafter, Hales, through his attorneys, sought to have the sale vacated. The trial court refused to so order and this appeal followed. We affirm.
The appellants argue that the trial court has erroneously ordered the sale for division because Mr. Roper never owned an interest in the lands, but that his interest was limited to an interest in the minerals only. There is evidence to the contrary, however, that the parties, in open court, stipulated to the contrary and the court entered judgment thereon. In Brocato v. Brocato, 332 So.2d 722, 723, 724 (Ala.1976), we held:
“We hold that the agreement and the judgment entered pursuant to it are binding on the appellants. This court has repeatedly held that agreements made in settlement of litigation are as binding on the parties thereto as any other contract. Ex parte Hayes, 92 Ala. 120, 9 So. 156 (1890). Title 46, § 46, Code, vests in an attorney — if indeed statutory authority is required — the rule probably exists independent of the statute, Wadsworth v. First National Bank of Montgomery, 124 Ala. 440, 27 So. 460 (1899), to bind his client in all matters which relate to the cause, including the right to settle by *230 agreement all questions involved therein.

The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and BEATTY, JJ., concur.